## The Holladay Case.

### Hickox *v.* Holladay and others.

*(Circuit Court, D. Oregon. December 14, 1886.)*

1. Receivers—Order for Sale by Federal Court of Property in Hands of Receiver of State Court.
   When a receiver is in possession of property pending a suit involving the right to its possession merely, as in a suit to redeem from a mortgage, the court is of opinion that a mere sale of such property on the process of another court is not an interference with such possession; but, in deference to the *dicta* of Mr. Justice Nelson in *Wiswall* v. *Sampson*, 14 How. 52, to the contrary, it declines to direct such sale.[1]

2. Same—Conflict of Laws—Appeal—Mandate—Extension of Time—Powers of Federal Courts.
   A decree of the supreme court of the state (Oregon) in *Holladay* v. *Holladay*, 11 Pac. Rep. 260, allowed the plaintiff to redeem the property therein mentioned from certain conveyances to the defendant, on the payment of a certain sum of money within 90 days therefrom. The circuit court to which the mandate was sent, on the application and consent of the parties, made an order enlarging the time for redemption to three years, and placing the property in the hands of two persons as receivers during that time. *Held,* that

[1] See Connor v. Hannover Ins. Co., 28 Fed. Rep. 549, and note.

these persons were not receivers, but only agents of the parties, and that their appointment would not prevent this court from directing the sale of a certain portion of said property on which the plaintiff herein has a lien by virtue of the decree heretofore given in this case.[1]

(*Syllabus by the Court.*)

Motion for Order of Sale to Satisfy Decree.

*James K. Kelly* and *Wm. H. Effinger*, for Hickox.

*Thomas N. Strong*, *George H. Williams*, and *Charles B. Bellinger*, for Holladay and Weidler.

DEADY, J. On June 14, 1886,[2] this court adjudged and made a decree in this cause to the effect (1) that a certain judgment obtained by the defendant Elliott in the supreme court of this state, on August 15, 1879, for the sum of $24,630.22, principal and costs, against Ben Holladay, and then amounting, with interest, to the sum of $38,975.62, does, by virtue of a certain assignment of February 13, 1874, from Elliott to the plaintiff, Hickox, in consideration of the sum of $14,979.85 advanced to the former by Martin White on the security thereof, belong to Hickox, in trust for White, subject to a claim of the defendant Effinger, for services as attorney in said suit, for $7,871.85; (2) that sundry parcels of real property, in said decree mentioned and specified, had before then belonged in equity to Ben Holladay, who caused the same to be conveyed to his brother, the defendant, Joseph Holladay, with intent to hinder and delay the plaintiff and others, his creditors, in the collection of their lawful debts and demands, and that Joseph Holladay gave no consideration for said conveyances, and received the same with the intent to hinder and delay the plaintiff, and others, the creditors of Ben Holladay aforesaid; (3) that said conveyances are void as against the plaintiff, and the amount due him on said judgment is a charge on said real property, and Joseph Holladay holds the legal title thereto, subject to said charge and in trust for the payment thereof; and (4) that unless Joseph Holladay shall, within 60 days, pay into court for the plaintiff said sum of $38,975.62, with interest therefrom, and $219.32 costs, the master of this court shall, on the order thereof, to be made on the application of the plaintiff, as soon as the receiver of said property in the case of *Holladay* v. *Holladay*, now pending in the state court, shall be discharged, sell, as on execution, so much of said property as may be necessary to discharge the claim of the plaintiff, and costs of such proceeding.

On October 26, 1886, the plaintiff made application for the order of sale provided for in the decree, based on the affidavit of the defendant Effinger, to the effect (1) that Joseph Holladay had not paid any part of said decree; (2) that the receiver of the property appointed by the state court in *Holladay* v. *Holladay*, namely, David P. Thompson, "had

[1] See Connor v. Hannover Ins. Co., 28 Fed. Rep. 549, and note.

[2] Hickox v. Elliott, (The Holladay Case,) 27 Fed. Rep. 830.

been discharged as such receiver, and there is now no legally appointed receiver in the possession" thereof; and (3) the suit of *Holladay* v. *Holladay*, "in which said receiver was appointed, has been finally determined[1] by the supreme court of Oregon, upon an appeal taken by said Joseph Holladay from the decision of the circuit court for Multnomah county."

On November 20th the application was heard by the court on the pleadings, proofs, and decree in this case, and copies, offered by the plaintiff, of a deed of trust from Ben Holladay and others to George W. Weidler, dated September 6, 1886; of articles of agreement between Ben Holladay and Esther, his wife, of the one part, and Joseph Holladay and George W. Weidler, of the other part, and their counsel, dated July 10, 1886; and of the order of the circuit court, dated November 17, 1883, appointing the receiver in *Holladay* v. *Holladay;* and the affidavit of George W. Weidler, dated November 6, 1886, offered by the defendant Joseph Holladay, with copies attached thereto of the final decree of the supreme court of the state in *Holladay* v. *Holladay*, of June 29, 1886; and the mandate transmitting the same to the circuit court; and the presentation of the same in said court by the attorney of Joseph Holladay, on July 12, 1886; of the order of the circuit court of the same date removing D. P. Thompson from the receivership aforesaid, and appointing Joseph Holladay and George W. Weidler thereto; and of the order of said court of September 27, 1886, approving and providing for the enforcement of the terms of the agreement aforesaid between Ben Holladay and Esther, his wife, and Joseph Holladay and George Weidler.

It appears that in January, 1873, Ben Holladay, being indebted to his brother, Joseph Holladay, in the sum of $100,000, gave him his note therefor; and that on November 1, 1876, he gave him another note of $163,345, in payment of this and other indebtedness. Thereafter, and until 1878, Ben Holladay, from time to time, caused the real and personal property in Oregon,—supposed to be worth not less than $500,-000,—of which he was the equitable owner, including that mentioned in the decree herein, to be conveyed to Joseph Holladay by deeds absolute on their face. Afterwards Joseph Holladay went into possession, and remained so until the appointment of the receiver, and took the rents and profits thereof to his own use, of which much the larger portion went to his brother's support.

In 1883 Ben Holladay commenced a suit against Joseph Holladay in the circuit court for Multnomah county, in which he stated the existence of the indebtedness to his brother, and the conveyance of his property to him as aforesaid; and alleged that the conveyances, although absolute in form, were really intended to operate as mortgages for the security of said debt, and asked to have them so declared, and to be allowed to redeem the property therefrom on the payment of what was due the mortgagee. In his answer Joseph Holladay affirmed that the conveyances were made to hinder and delay the grantor's creditors, and

---

[1]Holladay v. Holladay, (Or.) 11 Pac. Rep. 260.

on the expectation that he would nevertheless hold the property in trust for him, so as to prevent said creditors from subjecting it to the payment of their debts.

On appeal by Joseph Holladay, the supreme court determined that the conveyances were executed with intent that they should operate as mortgages, and not with intent to hinder and delay creditors; and that the grantor might redeem on the payment of the debt, and costs of suit, which former the court found then to be $315,492.46.. The decree of the court also provides (1) "that the redemption hereinbefore provided for be made by the plaintiff or his assigns within 90 days from the entry of this decree;" (2) that during said 90 days, "unless otherwise ordered by the court below," the receiver or his "successors" shall keep the possession of the property; (3) if the plaintiff fails to redeem within the time limited, the receiver shall pay over to the defendant all money in his hands, and "turn over and deliver to the sheriffs of the respective counties where said property may be situated all of the property in their respective counties," who shall, under the direction of the defendant, sell all or so much thereof "as upon execution,"· as may be necessary to satisfy said debt and costs, which sale shall bar the parties of all right in and to the premises, except the right of redemption provided by statute; and (4) that the cause be remanded to the court below, "and that a decree be there entered and docketed in accordance therewith." It does not appear that this decree has been either entered or docketed in the court below, but only that it was presented and read therein.

The giving and enforcing of a decision of the appellate court is regulated by section 536 of the Code of Civil Procedure. Subdivision 2 of the section comprehends this case,—one where "a new trial is not ordered;" and it provides that,. on the receipt of the mandate by the clerk, "a judgment or decree shall be entered in the journal, and docketed, in pursuance of the direction of the appellate court, in like manner, and with like effect, as if the same was given in the court below." The decision of the appellate court in *Holladay* v. *Holladay* cannot, it seems, have the force and effect of a decree or judicial determination of the controversy between the parties until it is entered in the journal of the circuit court as provided by statute, and directed by mandate of the appellate court.

So far, then, as appears, the proceedings and orders in the circuit court for the removal and appointment of receivers, and the sanction and enforcement of the private agreement of the parties concerning the disposition of the subject-matter of the suit, were *coram non judice*, and void. But the exhibits before me do not profess to contain a full copy of the record, and, while it does not appear affirmatively that the decision was entered in the journal of the circuit court, it may have been, and therefore it will be taken for granted that it was.

According to section 1029 of the Code of Civil Procedure, a receiver may be appointed in a civil suit (1) "provisionally, before decree, on the application of either party, when his right to the property, which is the subject of the suit, and which is in the possession of the adverse party,

is probable, and the property, or its rents or profits, are in danger of being lost, or materially injured or impaired; (2) after decree, to carry the same into effect; (3) to dispose of the property according to the decree, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied, and the debtor refuses to apply his property in satisfaction of the decree;" and also in cases of insolvent debtors, dissolved or insolvent corporations.

It may be admitted that the appointment of a receiver in *Holladay v. Holladay* was well calculated to coerce the defendant into a compliance with the demands of the plaintiff. But there does not appear to be any authority in this statute for so doing, at least so far as the real property is concerned; for, even on the theory and claim of the plaintiff in that suit, the defendant was the mortgagee of the property, with an unpaid debt equal in amount to the probable value of the property at a forced sale, who had gone into possession with the consent of the plaintiff, and was therefore entitled to remain in possession until his debt was paid, and in the mean time to receive and apply thereon the rents and profits of the property. *Roberts v. Sutherlin*, 4 Or. 219; *Witherell v. Wiberg*, 4 Sawy. 232.

The property, being real, could not be lost pending the litigation or otherwhile. Nor was it likely to be injured; but, if it was, the defendant's interest therein—the amount of his debt—was ample security therefor. And, as for the rents and profits, they could not be lost to the plaintiff; for, in effect, they belonged to the defendant, and were, in fact, as fast as received, a payment on his debt. If there was any danger of the defendant's disposing of the property, or incumbering it, pending the litigation, as the apparent owner thereof, he might have been enjoined from so doing.

The only controversy involved in the case of *Holladay v. Holladay* was this: Were the conveyances from the plaintiff to the defendant, although absolute in form, mortgages in fact? and, if the latter, what sum was then due the defendant thereon? The court decided that the conveyances were mortgages, and that the plaintiff might redeem on the payment of $315,492.46 in 90 days; and this was a determination of the whole controversy before the court. If the plaintiff did not redeem within the time limited, his right of redemption was gone, and the defendant, as between the parties to the conveyances, became the absolute owner of the property. The further provision in the decree that, in case of a failure to redeem, the receiver, instead of surrendering the property to Joseph Holladay, as he ought, should turn it over to the sheriffs of the respective counties in which it was situated, to be sold as upon execution, on the order of Joseph Holladay, appears to be an extrajudicial arrangement, devised by counsel for the purpose of keeping up what may be called an unbroken possession of this property in the hands of the officers of the state courts, in the hope of thus preventing the plaintiff, who has the first lien on it, from enforcing the same by the sale thereof on the process of this court, and thus collecting his demand against Ben Holladay.

The decree in *Holladay* v. *Holladay* is one allowing a mortgagor to redeem, and not a decree foreclosing these several mortgages, and directing the sale of the property included therein, to satisfy the debt secured thereby. The latter could only have been done by separate suits in, and the decrees of, the circuit courts of the various counties in which the property is situated. Code Civil Proc. § 383. But by this extrajudicial arrangement the receiver is to turn over this property to these various sheriffs, who are, without judgment or process of or from the courts of which they are officers, or otherwise, to hold the same for Joseph Holladay, and dispose of it, as upon execution, at his will and pleasure, which may be at once, and may be never.

The agreement between the Holladays and their counsel, of July 10, 1886, divides this property into two lots, described in two memorandums, the first of which contains eleven valued parcels, situate in six different counties, amounting in the aggregate to $327,500, and includes the property mentioned in the decree herein. It provides as follows:

(1) The debt of Joseph Holladay is increased $31,194, making it $346,686.46, drawing interest at 6 per centum; and Ben Holladay has the right to redeem the property mentioned in Memorandum 1, or any parcel thereof, within three years from the date of the agreement, on the payment of the affixed value.

(2) The property mentioned in Memorandum 2 is released from the lien of the Holladay mortgage and decree, and vested in George W. Weidler, as trustee, to sell and dispose of the same, and pay the debts due from Ben Holladay to August Belmont, the Mutual Life Insurance Company, S. L. M. Barlow, and others, the attorneys and counsel in this litigation; which provision is carried out by the deed of trust from Ben Holladay and Esther, his wife, to said Weidler, of September —, 1886, conveying said property to him in trust to pay said debts therewith, without naming the amounts, according to the terms of an agreement between said parties and Holladay, of August 31, 1886, which are not disclosed, and which was apparently made in fulfillment of the undertaking in this agreement that Ben Holladay would in 90 days procure said creditors to relinquish all claims to priority of security or payment over Joseph Holladay.

(3) But if sundry other named creditors of Ben Holladay's, including this plaintiff, or any of them, shall succeed in having said mortgages adjudged fraudulent as against them, or any of them, Joseph Holladay shall be so far indemnified out of the proceeds of the property in Memorandum 2, and no creditor shall be paid anything until he assents to this agreement.

(4) The court may remove the present receiver, (D. P. Thompson,) and appoint Joseph Holladay and George W. Weidler receivers of the property in Memorandum 1, "to take charge of, manage, sell, and dispose of the same during said three years," or until the redemption provided for; and "the court may direct the receivers to apply the income and proceeds of such property, when sold," as follows: *First.* To the payment of taxes, assessments, repairs, and insurance thereon; taxes on the

debts therein secured; and the costs of that litigation. *Second.* The payment of interest to Joseph Holladay, and the other creditors whom Ben Holladay may compromise with. *Third.* To the payment of $300 a month to Esther, the wife of Ben Holladay, and her heirs, "for her subsistence pending the settlement of said indebtedness, which sum is in consideration of the execution by her * * * of this agreement, and of such mortgages, transfers, and assignments requisite to the carrying out of the terms hereof, and to bar all her claims upon said property of dower or otherwise. *Fourth.* To the payment of $346,686.46, with interest, to Joseph Holladay. *Fifth.* To the payment of the claims of the above-mentioned creditors of Ben Holladay.

(5) George W. Weidler, as trustee, shall manage and dispose of the property mentioned in Memorandum 2, and apply the proceeds as provided in the first, second, and third subdivisions aforesaid; and the residue of the proceeds of the property in Memorandum 1 shall be applied to the creditors first mentioned herein.

(6) On the payment of Joseph Holladay, the property in Memorandum 1 not redeemed or disposed of shall be conveyed to George W. Weidler, in trust for the payment of Ben Holladay's creditors: provided, the debts due August Belmont, the Mutual Life Insurance Company, S. L. M. Barlow, and the attorneys and counsel aforesaid, shall be a lien thereon, second only to that of Joseph Holladay.

(7) When any property is sold by said receivers or trustee, the court may direct that the same be conveyed in payment of the purchase price, and such conveyance shall have the effect to pass the said property to the purchaser in fee-simple, clear of all incumbrances.

On July 12, 1886, the court, in pursuance of the stipulation of the parties, removed D. P. Thompson from the receivership, and appointed Joseph Holladay and George W. Weidler receivers, with directions to Thompson to turn over the peroprty to them, who are to "take, manage, and retain" the same "until discharged by the court."

On September 27, 1886, the court, on the application of the parties and the filing of the agreement aforesaid, declared that the terms and conditions of said agreement should be enforced by the court, and ordered (1) that the time of redemption be enlarged to three years from July 10, 1886; (2) that the receivers convey to George W. Weidler, trustee, all the property in their hands mentioned in Memorandum 2, and discharge the same from the custody of the court, and the lien of the decree therein; (3) that the receivers "safely keep, hold, and manage" the rest of the property, as heretofore, until the further order of the court, and "apply the proceeds thereof in making the payments" provided for in said agreement, until the further order of this court.

I have thus, with some labor and pains, given a substantial outline of the facts and proceedings involved in this application, and without which the question involved could not well be understood.

Counsel for Joseph Holladay and Weidler, representing all the parties to the agreement of July, contend that the property is in the possession of the receivers of the state court, and that this court cannot and will

not do anything to interfere with such possession, and that a mere sale by a master, on the decree of this court, would be such an interference.

On the other hand, counsel for the plaintiff insist that Holladay and Weidler are not receivers at all, but the mere agents of the Holladays and their attorneys, in a scheme devised by themselves for the purpose of appropriating this property to their own use, and that of three favored creditors, to the exclusion of the plaintiff and others having prior rights therein; and that, even if they are receivers, being in possession simply without title, a sale on the decree of this court would not interfere therewith.

On the latter question the case relied on by counsel for Holladay and Weidler is *Wiswall* v. *Sampson*, 14 How. 52. The language of the opinion by Mr. Justice NELSON is very strong and unqualified,—much more so than the case required,—to the effect that a sale of property made on the process of one court, while the same is in the possession of a receiver appointed by another, is illegal and void.

A contrary view is maintained with great force and learning in *Chautauqua Co. Bank* v. *Risley*, 19 N. Y. 369. In each of these cases the receiver was appointed in a suit by a judgment creditor to set aside a fraudulent conveyance, and subject the property to the payment of the grantor's debts, and the ultimate purpose of the proceeding was to sell the property, and create a fund for distribution among creditors. In each case the sale in question was made at the instance of a judgment creditor, whose judgment antedated the appointment of the receiver, but was subsequent to the execution of the fraudulent conveyance. In the first case the conveyance based on the sale was held invalid, while in the second one it was held valid. But even then the court admits that the party making the sale while the property is in the possession of the receiver is guilty of a contempt. Indeed, it says (page 377) the question is merely one of contempt, and does not affect the legal right.

But as the title of the judgment debtor in each case had passed to the grantee in the fraudulent conveyance before the judgment was obtained on which the sale was made, the judgment creditor had no lien on the property. Therefore nothing passed by the sale, and on this ground, at least in this state, the sale would be held inoperative. *In re Estes*, 6 Sawy. 459; S. C. 3 Fed. Rep. 134. The debtor's conveyance having been set aside as fraudulent in the suit in equity, the property was in the hands of the receiver for the purposes thereof.

It may be admitted that when a court takes possession of property by means of a receiver, at the suit of creditors, for the purpose of disposing of the same, and distributing the proceeds thereof according to the respective rights of said creditors, a sale or an attempt to sell such property on the process of another court is, in effect, an interference with such possession. And this is so because the possession of the receiver in such case is not a mere provisional custody, pending the litigation in which he is appointed, for the benefit of the party who shall be found entitled thereto, but it is a possession taken and held with a view to a final disposition of the property, by converting it into money, and dis-

tributing the same among the parties entitled thereto. But, in my judgment, where real property is in the possession of a receiver merely provisionally, for the purpose of preserving the same and the income thereof intact for the person to whom the judgment of the court may determine it belongs, the sale of the property pending such possession of the receiver on the process of another court, against one of the parties to the litigation, or the acquisition of a lien thereon by a judgment in another court against such party, is not an interference with the possession of the receiver. *Ellicott* v. *United States Ins. Co.*, 7 Gill, 307.

And such is this case. The relief sought in *Holladay* v. *Holladay* in no way involved the sale or distribution of the property, but only the right of the plaintiff to redeem the same from what he alleged were mortgages given thereon to the defendant, and thus be restored to his original right and possession. By the order of November 17, 1883, appointing the receiver, he was simply directed to take the property included in the alleged mortgages into his possession, manage the same,—care for it,— until discharged by the court. And the order of July 12, 1886, does no more. By it, Holladay and Weidler are only directed to take and manage the property until discharged by the court.

The receiver has no title to the property, (High, Rec. § 5,) and that is all that is affected or changed by a sale. If it becomes necessary to resort to legal proceedings to obtain possession under such sale, the party must wait until the receiver is discharged, or obtain permission from the court appointing him; and this present right to sell may be a valuable one. By the exercise of it in this case, a creditor of Ben Holladay,— the confessed owner of the property,—having an established claim against him, and the first lien on the property, is enabled to realize on his security at once, without awaiting the result of the contentions or contrivances for delay of the parties to a suit in which he has no interest, and whose interests in the property are altogether subordinate to his. But considering the unqualified language or *dicta* of Mr. Justice NELSON in *Wiswall* v. *Sampson, supra,* I do not feel at liberty, sitting in this subordinate tribunal, to follow my own judgment, and direct a sale of property in the hands of a receiver for any purpose; and particularly a court of another jurisdiction.

And this brings me to the consideration of the question, is this property now in the hands of a receiver at all? Or is there now any receiver in *Holladay* v. *Holladay?* After a careful examination of the subject, I am constrained to answer this question in the negative. The functions of a receiver usually terminate with the termination of the litigation in which he was appointed, (High, Rec. § 833;) and although he may not be beyond the power of the court until he accounts for his trust, and is formally discharged, yet his general functions and powers, including the custody and management of the property, terminate with the final decree, unless and only so far as it may provide some act or duty to be performed by him, concerning the disposition of the property, other than the mere surrender of it to the party thereby entitled to receive it.

When it was determined in this case by the decree of the supreme

court that Joseph Holladay was only.the mortgagee of the property, and that Ben Holladay was entitled to redeem the same on the payment of what was due the former on a certain time, the litigation was practically at an end. It being also admitted that the mortgagee was rightfully in possession at the appointment of the receiver, the latter should have been directed or allowed to return the property to him to keep until the redemption was made. But for some reason, of which I do not stop to question the sufficiency or propriety, the receiver was directed to retain the possession during the 90 days allowed for redemption, and, if the redemption was not then made, to turn the same over to the sheriff for the purpose of being sold by them to satisfy Joseph Holladay's mortgage, when it would please him so to direct. No attempt was ever made to carry out this part of the decree, and the question of whether it was beyond the power of the court to make, need not be any further considered than already suggested. The court having decided that the property should remain in the hands of the receiver pending the redemption, it may also be admitted that the court below might change the receiver during that period, or fill a vacancy therein. It had no power to modify the decree of the supreme court, but under subdivision 2 of section 536 of the Code of Civil Procedure it had the same power to enforce it as if made by itself; and, so far as a receiver was a part of the means appointed in the decree for its enforcement, it might fill a vacancy, or make a change therein, when necessary. But at the end of the 90 days, whether the redemption was made or not, the receiver's functions were at an end, and the power of the court over the subject was confined to the enforcement of the decree by compelling Joseph Holladay to reconvey the property in case his debt was duly tendered him. The power to change the provision for the custody of the property pending the redemption is the only direct power over the decree given by the appellate court to the court below; and under that it does not appear that the court could do more than change the receiver, or restore the property to the possession of Joseph Holladay, from whence it was taken, and where it properly belonged. It is not admitted that the supreme court could, if it would, give the circuit court any direction contrary to the determination it made of the only question before it,—the right of Ben Holladay to redeem this property.

I make no account of the further direction concerning the custody of the property until the levies are made by the sheriffs of the various counties in which the property is situated, under Joseph Holladay's direction. The provision is ambiguous, and if it is intended, as suggested on the argument, to give the circuit court power to control the custody of this property, so as to prevent the plaintiff from enforcing his lien thereon by a sale thereof sufficient to satisfy his debt, not only during the term appointed for redemption, but as long thereafter as Joseph Holladay shall please to extend it, by delaying the levy, then I think the court has undertaken to provide a perpetuity in favor of a fraudulent debtor and his grantee that no one is bound to regard. Therefore I prefer to think that the reference to the levy, as a point of time to which the custody of the

court might extend, was only intended as cumulative, or to emphasize the termination of the 90 days with which it was coterminous, and that the whole provision, taken together, means that the custody of the court shall terminate at the end of the 90 days,—the time when the levy may be made. Now, on the strength of this decree, the parties and their counsel drop their contention, and arrange a scheme for their mutual protection against the claim of the plaintiff. To this end a kind of family settlement of their claims is composed, by which this property is virtually put in their own hands, as receivers, for three years, with leave to Ben Holladay to redeem in that time all or any of the eleven parcels into which it has been arranged; the money paid therefor to go to Joseph Holladay in payment of his debt, and, if any of it is left after such payment, it is to be applied on the claims of counsel, and the three preferred creditors, whom one of them represents. The remainder of the property, if any, is to be conveyed to Ben Holladay, or his trustee, as he may think best. In the mean time the rents and profits of the property, after paying taxes, insurance, and repairs, are to be applied to the payment (1) of taxes on the debts thereby secured; (2) of interest on Joseph Holladay's debt; (3) of $300 a month to the wife of the debtor, in consideration, it is said, of the release of her dower, though it does not appear that she would be entitled to dower in any of it, but the contrary, (*Farnum* v. *Loomis*, 2 Or. 29;) (4) of Joseph Holladay's debt; and (5) of the debts of counsel and the favored creditors. Then the scheme is presented to the circuit court, and, by consent of the parties, made, in form, a part of the decree of the court. If the court had the power to do this, it might have extended the time for redemption indefinitely, on the consent of the parties, and in the mean time, by means of these so-called "receivers," have permanently protected the property from the claims and liens of all the other creditors.

In my judgment the functions and authority of the receivers over this real property terminated at the end of the 90 days, and the jurisdiction of the court was gone, except to call the receiver to an account for his trust, and, it may be, to compel the mortgagee to reconvey, if the tender of his debt had been duly made. The consent of the parties, so far, at least, as third persons are concerned, does not give a court jurisdiction to appoint a receiver, (*Whelpley* v. *Erie Ry. Co.*, 6 Blatchf. 274;) and in Louisiana it has been decided that a receiver of partnership funds, appointed by consent of both partners pending a suit for the dissolution of the firm, is not an officer of the court, but merely an agent of the parties. *Kellar* v. *Williams*, 3 Rob. 321; so cited in note to section 1, in High on Receivers.

The presumption is that the order for the enforcement of this scheme having been made on the joint application and consent of the parties, the court did not consider or consciously consent to its operation, so far as the rights of third persons are concerned; and I doubt not that, on the matter being brought to its attention, it will so declare. The respect which I am bound to entertain for this tribunal will not allow me to believe that it would give its deliberate sanction to a scheme which, so far

as this plaintiff is concerned, is nothing more or less than a fraudulent device to hinder and delay creditors.

My conclusion therefore is that Holladay and Weidler are not receivers of this property, and that there is nothing to prevent this court from directing a sale of so much of the same as will satisfy the decree herein.

The orders of the court will be that the master sell the property as on execution, and that, on the coming in of his report, the court will consider and determine whether, if possession is withheld, to direct the issue of a writ of possession in favor of the purchaser, or leave him to his action of ejectment.