GROSSCUP v. GERMAN SAVINGS & LOAN SOCIETY et al.

(Circuit Court, D. Oregon. June 8, 1908.)

No. 2,147.

1. MORTGAGES—FORECLOSURE SUIT—ISSUES DETERMINABLE.

In a foreclosure suit, the court cannot undertake to determine the right of a party who sets up a legal title which is adverse, and, if valid, paramount, to the title of both mortgagor and mortgagee.

2. RECEIVERS—TITLE TO AND POSSESSION OF PROPERTY—SALE UNDER EXECUTION FROM ANOTHER COURT.

While mortgaged property is in the hands of a receiver appointed in a foreclosure suit, with authority to enter into possession, to care for the property, keep the buildings insured, pay the taxes, and collect the rents and profits, it cannot be sold under an execution issued out of another court, and such an attempted sale is ineffectual to effect a transfer of title to the equity of redemption from the original holder to the purchaser, although it may subrogate the latter to the rights of the judgment plaintiff and render him a proper party in the foreclosure suit, where by statute the judgment is made a lien.

In Equity.

On July 25, 1894, the German Savings & Loan Society instituted a suit to foreclose a mortgage given by defendants Van B. De Lashmutt and wife on the south two-thirds of lot 3, block 22, in the city of Portland, with other realty, to secure a loan of $25,000. William L. Starr and his wife, Nannie Starr, were also made parties defendant. A little later, to wit, on August 13, 1894, upon the application of complainant in such suit, S. Goldsmith was appointed receiver under the following order: "Upon reading the bill of complaint and the affidavit of B. Goldsmith herein, and on hearing Milton W. Smith, of counsel, it is ordered that S. Goldsmith be appointed receiver of the property described in said bill during the pendency of this suit, and until the right of redemption under the mortgage sought to be foreclosed in said bill shall have expired, with authority to take possession of and care for said mortgaged premises, to pay the taxes on the same, to keep the buildings insured from loss by fire, and to collect the rents and profits thereof during said period, all subject, however, to the further orders of this court." The receiver entered at once into possession of the realty, and has so continued ever since, and, among other things, has collected the rents. One Bridget Lavin was the owner of the realty prior to June, 1887, and on the 7th day of that month executed a deed for the same to Van B. De Lashmutt. On January 7, 1890, De Lashmutt and wife executed the mortgage upon which the suit was instituted. Subsequently, on April 7, 1893, De Lashmutt and wife deeded the property to defendant W. L. Starr, who is the son and heir of Bridget Lavin. Lavin made and published a will on May 1, 1886, whereby she devised the property in question to Starr. She died on June 20, 1892, in the state of California, and a little later Starr had the will probated upon his own petition, showing that at the time of making the will Lavin was of sound mind and memory and not under any restraint. By their answer to the loan society's original bill, Starr and wife set up that Starr was seised in fee of the land by inheritance from his mother, and that at the time of the execution by her of the deed to De Lashmutt she was of unsound mind and incapable of making the conveyance, and that such deed was without validity and void; hence that De Lashmutt was not seised of the premises at the time of the execution of the mortgage to the loan society, and that the mortgage is also null and of no effect. The complainant thereupon, by an amendment of its bill, set up that the said deed was executed for a fair consideration, to wit, $10,000, paid by De Lashmutt at the time, and without any knowledge or notice that Lavin was non compos mentis, or incapable of making such deed, if the same be true, as alleged in the answer, and that complainant took and received its mortgage from De Lashmutt in good faith, without any notice or

knowledge of such condition. Subsequently Starr and wife filed their cross-bill, setting up the same matter as contained in their answer, asking affirmative relief that both the deed and mortgage be declared null and void. The pleadings have been formulated under this cross-bill, putting the cause at issue. By the cross-bill Starr also claims title under the will and devise of his mother. On November 25, 1899, Nannie Starr sued W. L. Starr, her husband, in the circuit court of the state of Oregon for Multnomah county, for support, and thereafter obtained a decree, which, with costs and accumulations, amounted, on May 19, 1902, to $281.25. Execution was issued on the judgment on that date, and levy made upon the lot involved here, which was sold at sheriff's sale on August 4, 1902, for $300.50, and purchased by Thomas Dobson. In due time a deed was executed to Dobson, and Dobson conveyed to Louis J. Goldsmith. On October 31, 1905, B. S. Grosscup, having succeeded to all the title and interest of the loan society in its mortgage, filed an original bill, in the nature of a supplemental bill, setting up the fact that he had so succeeded to the ownership of such mortgage, and, further, that through the suit of Starr v. Starr in the state court, and the execution and sale of Starr's interest in the premises in question, and the sheriff's deed, and the subsequent deed of Dobson, Goldsmith had succeeded to the title and interest of Starr in the equity of redemption; and praying that Goldsmith be made a party to the foreclosure, that Starr be required to show cause why Goldsmith has not succeeded to his equity, and for a foreclosure as demanded in the original bill.

Williams, Wood & Linthicum, for complainant
Milton W. Smith, for defendant society.
R. and E. B. Williams, for defendant De Lashmutt.
Martin L. Pipes and Henry St. Rayner, for defendant Starr.
L. E. Latourette, for defendant Goldsmith.

WOLVERTON, District Judge (after stating the facts as above). Two questions are involved at this stage of the controversy, and these only were submitted at the argument: First, whether, in a foreclosure proceeding, the court should entertain jurisdiction to determine relative to the fee-simple title of the realty mortgaged, alleged to be paramount to the title of the mortgagor, which, if found to be as alleged, will operate to defeat the mortgage; and, second, whether, while the realty mortgaged is in the hands of a receiver appointed under a foreclosure proceeding, with authority to enter into the possession of such realty, to care for the same, to keep the buildings thereon insured and pay the taxes, and to collect the rents and profits during his incumbency, the property can be sold under execution issued out of a court other than that in which the foreclosure is pending, and thereby effect a transfer of title from the original holder of the equity of redemption to the purchaser. Both questions are of vital consequence to the litigants, and I have given them the careful attention that their importance suggests.

As a matter of practice, it is said to be "well settled that in a foreclosure proceeding the complainant cannot make a person who claims adversely to both the mortgagor and mortgagee a party, and litigate and settle his rights in that case." Dial v. Reynolds, 96 U. S. 340, 341, 24 L. Ed. 644, citing Barbour on Parties in Equity, 493. The syllabus of the case states very well what the court evidently intended to decide. It is as follows:

"A bill of foreclosure is bad, for misjoinder of parties and for multifariousness, where persons are made defendants thereto who claim title adversely

to the mortgagor and the complainant, and the latter seeks in that suit to litigate and settle his rights."

Other cases go further, as in Summers v. Bromley, 28 Mich. 125, where the principle is stated thus:

"It is not competent in a foreclosure suit, whatever the pleadings, to proceed to litigate and settle the right of a party who sets up a legal title which, if valid, is adverse and paramount to the title of both mortgagor and mortgagee."

After setting out the rule as laid down in 2 Jones on Mortgages, § 1859, as follows:

"Only the rights and interests under the mortgage and subsequent to it can properly be litigated upon a bill of foreclosure. One claiming adversely to the title of the mortgagor cannot be made a party to the suit for the purpose of trying his adverse claim. * * * This prior claim is not a subject-matter of litigation in the foreclosure suit, and remains unaffected by it"

—Mr. Justice Gordon, in California Safe-Deposit & Trust Co. v. Cheney Electric Light, Telephone & Power Co., 12 Wash. 138, 40 Pac. 732, says:

"This rule is upheld by the great weight of authority upon the question."

So it is held in Banning v. Bradford, 21 Minn. 308, 18 Am. Rep. 398, that:

"A mortgagee cannot maintain an action to foreclose his mortgage against one who claims the premises described in the mortgage, by a title adverse, and, if valid, paramount, to that of the mortgagor."

If this be so as to the mortgagee, the rule must necessarily operate with the same vital cogency against one who, as defendant or by intervention, seeks to interpose a title paramount to that of the mortgagor to destroy the validity of the mortgage. Such a thing is not permissible in a suit by a purchaser against the vendor for specific performance, or by a grantor against the grantee for reformation of a deed, as there exists no privity of contract wherein to found the suit on such relationship. Adopting the language of the court in the case last cited:

"The only proper parties are the mortgagor and the mortgagee, and those who have acquired rights or interest under them in the mortgagor's estate; for these are the only persons having any rights or obligations growing out of the mortgage, or interested in any manner in the subject-matter of the action. A stranger claiming adversely to the title of the mortgagor, as he is not affected by the mortgage, is in no way interested in the foreclosure suit. It can make no difference to him whether the mortgage is valid or invalid, whether it be discharged or foreclosed, whether the estate mortgaged, the only estate which can be affected by the decree, remains in the mortgagor or is transferred to another."

The present suit, in the ramifications taken by the pleadings, affords an apt illustration of the results to which the inquiry would lead if the rule were otherwise than as we have ascertained it to be. Not only is Starr seeking to impeach the title of De Lashmutt by reason of the alleged mental incapacity of Mrs. Lavin to make the deed to him, but he is also striving to have an accounting decreed as between himself and De Lashmutt as to the rents and profits—a matter so inordi-

nately collateral to the cause of suit as that the primary inquiry would be entirely diverted for the time being by pausing to settle it. It is not only cumbersome, and likewise burdensome, but it leads to confusion and consequent delay, to step aside to attend to such merely collateral and disconnected interests before the real issue can be disposed of. Nor is the case of Hefner v. Northwestern Life Ins. Co., 123 U. S. 747, 8 Sup. Ct. 337, 31 L. Ed. 309, in any way opposed to the rule. It emphasizes the rule as one of practice, and characterizes a bill combining the two controversies as multifarious; and, while it declares the proper practice to be that the objection for multifariousness cannot be taken advantage of by the defendant except by demurrer, plea, or answer, yet it further asserts that it is a thing wholly within the discretion of the court to take the objection either at the hearing or upon an appeal. But, further, as to the nature of that case, a tax title was acquired subsequent to the execution of the mortgage upon which suit was entertained to foreclose. The title, while subsequent to the mortgage, was made, under the local statute, paramount in right to all preceding titles. The holder of this title was made a party defendant to the suit to foreclose, and was duly served, but made default, and a decree was entered in due course declaring the mortgage to be a lien upon the mortgaged premises, paramount to the lien and interest of each of the defendants. The premises were sold under the decree, and the question came up in an independent action, in the nature of ejectment, in a purely collateral way, whether the owner of the tax title was foreclosed of his interests in the foreclosure proceeding. It was held that he was, to the extent, at least, that the decree precluded him from claiming title under·the tax deed in the ejectment action; but in the course of the consideration of the subject the court distinctly declared that:

"As a general rule, a court of equity, in a suit to foreclose a mortgage, will not undertake to determine the validity of a title prior to the mortgage and adverse to both mortgagor and mortgagee, because such a controversy is independent of the controversy between the mortgagor and the mortgagee as to the foreclosure or redemption of the mortgage, and to join the two controversies in one bill would make it multifarious."

Here the objectionable and multifarious matter has been brought into the record by the defendant Starr, and the complainant has been compelled to come to an issue as to it. But now complainant insists that he ought not to be required to litigate as to such purely collateral matter along with his foreclosure. In view of the great prolixity of inquiry that the objectionable issues involve, I am of the firm opinion that the court ought not to entertain jurisdiction to consider them in this proceeding. No especial good can come from so doing, and Starr has not been remediless otherwise, allowing his cause to be just.

Now, as to the second question. The general rule seems to be that property in the hands of a receiver is exempt from judicial process and sale, unless through permission of the appointing court. 23 Am. & Eng. Enc. (2d Ed.) 1090. As it respects a sale through execution, under a paramount judgment, during the possession of a receiver, the rule has been quite uniformly adopted to the effect that it cannot be made without leave of the court, and that, if so made without leave,

the purchaser will acquire no title in the property sold. Such, in effect, is the holding in Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322. That case was brought by a judgment creditor to set aside a fraudulent transfer and to subject the realty involved to the payment of his judgment. A receiver was appointed, who entered and retained possession during the pendency of the suit. Execution had been issued, and levy made, under a previous or paramount judgment, prior to the appointment of the receiver, but the sale was consummated subsequent thereto. In disposing of the case, the court says:

"It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made; and, in order to effect this, the court must administer it independently of any rights acquired by third persons, pending the litigation. Otherwise, the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless."

And further:

"As we have already said, it is sufficient, for the disposition of this case, to hold that, while the estate is in the custody of the court as a fund to abide the result of a suit pending, no sale of the property can take place, either on execution or otherwise, without the leave of the court for that purpose; and upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

The doctrine of this case has not been departed from by the federal Supreme Court. Heidritter v. Elizabeth Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; Hitz v. Jenks, 185 U. S. 155, 22 Sup. Ct. 598, 46 L. Ed. 851. In the last case, it is said:

"And the doctrine that a receiver is not to be disturbed extends even to cases in which he has been appointed expressly without prejudice to the rights of persons having prior legal or equitable interests; and the individuals having such prior interests must, if they desire to avail themselves of them, apply to the court, either for liberty to bring ejectment or to be examined pro interesse suo, and this though their right to the possession is clear."

See, also, Virginia, T. & C. Steel & Iron Co. v. Bristol Land Co. (C. C.) 88 Fed. 134; Minot v. Mastin, 95 Fed. 734, 37 C. C. A. 234.

State courts hold to the same doctrine. Pelletier v. Lumber Co., 123 N. C. 596, 31 S. E. 855, 68 Am. St. Rep. 837; Edwards v. Norton, 55 Tex. 405; Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858; Jackson v. Lahee, 114 Ill. 287, 2 N. E. 172; Robinson v. Atlantic & Great Western Railway Co., 66 Pa. 160. Noting the subject-matter of these cases in the order of their citation, the first and third were for appointment of receivers for insolvent corporations, the fourth upon dissolution of an insolvent copartnership, the second upon a bill for specific performance, and the fifth under a foreclosure proceeding; but in all the view is

entertained that an execution sale of property while in the possession of a receiver will not operate to pass the title. The principle which lies back of the doctrine is that property, either in the actual or constructive possession of the receiver, is in the custody of the law—that is, in the hands of the court—and to suffer it to be sold or dealt with through the process of another court, whereby title is conferred, would be to deprive the appointing court of adequate dominion over the res to effectively administer and dispose of it for the purposes for which it was taken into custody. It is only through leave of the appointing court that one will be suffered to insist upon the enforcement of any alleged paramount claim, right, or title; and, while the receivership proceeding may not, and usually will not, operate to divest such claim, right, or title, yet its enforcement, except by the appropriate leave of court, must remain in absolute abeyance until the conclusion of such proceeding.

Some early cases in New York are relied upon as being opposed to this doctrine and the authorities which support it. The first cited is Foster v. Townshend, 2 Abb. N. C. 29, decided by the Court of Appeals in January, 1877. There the receiver brought an action to set aside a deed and an assignment of a mortgage, because they were executed relative to the property while in the hands of the receiver. The transfers were effected by private arrangement, and not through execution sale, and the receivership was peculiar to a statute providing for the sequestration only of the rents and profits of the husband's real estate for application towards an allowance provided by decree for the maintenance of the wife and children. After a reference to the nature of the possession by the receiver for the purposes of the sequestration, the court concluded that the possession could only be for the collection of such rents and profits, which in no way affected the title to the realty, and it was finally decided that the conveyance and assignment were not void, as the execution of them in no way disturbed the receiver's possession. This case is clearly distinguished from Wiswall v. Sampson and others following it. Another case is Chautauqua County Bank v. Risley, 19 N. Y. 369, 75 Am. Dec. 347. In this the sale under execution was upon a junior judgment, and was consummated after the termination of the receivership. It was held that the purchaser acquired the superior title, as the title acquired through the receivership was by virtue of the debtor's own conveyance to the receiver (required by statute) and the latter's sale to the purchaser. In the course of the opinion rendered, Mr. Justice Comstock, speaking for the court, says:

"I see nothing even to suggest a doubt of the validity of a title acquired by sale under a judgment, which is a legal lien upon the land sold prior and paramount to the title or possession of a receiver. It may be that the creditor should ask leave of the court of chancery before he proceeds to sell, or that the purchaser acquiring the title should make a like application before he brings his ejectment. If, however, he fails to do so, the question is merely whether the court will consider him in contempt and punish him accordingly. The sale itself is but the assertion of a legal right, and it cannot be illegal and void on the ground that the leave of an equitable tribunal is not first asked and obtained. It may be that the case of Wiswall v. Sampson, in the Supreme Court of the United States (14 How. 52, 14 L. Ed. 322), goes to the extent of laying down a different doctrine. If so, we are constrained to say that we cannot follow that decision."

So, also, in Albany City Bank v. Schermerhorn, 9 Paige, Ch. 372, 38 Am. Dec. 551, the court makes use of language indicating the view that the levy of an execution upon real estate will work no disturbance of the receiver's possession, and that a purchaser under the execution sale could, upon appropriate proceedings, avail himself of his possession. To the same purpose is Albany City Bank v. Schermerhorn, 10 Paige, Ch. 263. However, in a much later case, the Court of Appeals of New York seems to have adopted the doctrine of Wiswall v. Sampson, by citing it as authoritative, and delaring that a sale under execution without leave of court, where property is in the custody of the law, is wholly illegal and void, although the cause was one involving personalty. This case goes far toward overturning the former holdings of the court in that state. Wiswall v. Sampson is somewhat questioned in the Holladay Case (C. C.) 29 Fed. 226; but the eminent jurist sitting does not go so far as to controvert its soundness in principle. No other cases have been brought to my attention that seem to impinge upon the doctrine.

It is argued that a distinction should be made between a receiver appointed in a case like that of Wiswall v. Sampson, where the purpose was to dispose of the property and to marshal the funds arising therefrom, according as the ultimate adjudication with reference thereto might require, and one appointed like the present, in a foreclosure proceeding, where the duty imposed was to collect the rents and apply them to the mortgage indebtedness. It should be noted that the appointment gives further authority than this. The receiver is empowered to care for the property, keep up the insurance, and pay the taxes, so that the authority is about as full as that ordinarily conferred. It is difficult to understand why there should be such a distinction. The property in either case is placed in the custody of the law. The hand of the court is upon it; and, if the process of another court is inadequate to seize and transfer it, so that title will vest in the one case, there seems to be no potent reason why it should operate effectively in the other. In either case the custody of the court must necessarily be disturbed, and there will be the invasion of one jurisdiction by another, thus leading to the very complication that it is the policy of the law to prevent. Nor is it patent that it can make any difference that the sale on execution is of an equity of redemption, instead of the paramount title. The principle involved remains the same. I am of the opinion, therefore, that the execution sale under Mrs. Starr's decree is void and ineffective to vest title in Dobson, and hence that Goldsmith is not the owner of the equity of redemption. I think, however, that Goldsmith has a lien by subrogation to the right of the judgment creditor, Mrs. Nannie Starr. It has been held that an attachment under the California Code is effective to confer a lien, as the mere levy of the process would in no way disturb the possession of the receiver. In re Hall & Stilson Co. (C. C.) 73 Fed. 527. And such will probably be the result as applied to an attachment under the Oregon statute. The reason for the lien attaching would operate with greater force as applied to a judgment or decree cast by force of the statute without the necessity of a

levy. Mrs. Starr's decree against Starr became effective, therefore, to impress the realty of Starr with a lien from the time of its docketing. Beyond this, a void sale under the decree would, I am inclined to think, operate to subrogate the purchaser to the rights of the judgment creditor, upon the same principle that a void foreclosure will subrogate the purchaser under the decree to the mortgagee's rights and lien, and empower the latter to foreclose in his own right. Such being the case, Goldsmith is entitled to have his lien paid out of any surplus that may remain after the payment of the plaintiff's mortgage and other prior and superior liens, if any.

Starr must be decreed to be the owner of the equity of redemption, subject to the lien of Goldsmith for the amount of Mrs. Starr's decree against him, including the costs thereof.